Defendant Edward Arnold appeals the judgment of the Medina Court of Common Pleas denying his motion to suppress. Defendant argues that the trial court erred by determining that defendant had not been "seized" for purposes of Fourth Amendment safeguards, and he argues that his consent to the search was not voluntary. This Court affirms the judgment of the trial court.
 I.
On May 13, 1997, Police Chief Keith Lavery and Officer James Reddy were on routine patrol in the village of Briarwood Beach, Medina County, Ohio.[1] Shortly after 5:00 p.m., Chief Lavery pulled into the parking lot of the Town Hall and Village Park. At this time they observed defendant walking in front of and away from their vehicle. Chief Lavery proceeded to roll his window down and say "Sir" to defendant. Defendant then turned toward the cruiser and immediately began approaching the officers. Chief Lavery asked defendant to identify himself and then informed him that the park was closed due to recent criminal activity and that he was not permitted to park his vehicle in the parking lot. Defendant stated to the officers that he was there to use the park and that he did not "want any problems because he was on probation for robbery[.]" The officers then exited their police cruiser and continued to speak with defendant.
Chief Lavery asked if the van parked in the lot belonged to defendant and he indicated that it was his van. Chief Lavery then asked defendant if he had any contraband in the vehicle and requested his consent to search the van. Defendant consented and the officers searched the vehicle. No evidence of contraband was discovered during the search, but as Chief Lavery finished the search and turned to defendant, he noticed that defendant appeared nervous. Chief Lavery inquired whether defendant had any weapons on his person, and again requested and was given consent to "frisk" defendant for weapons. During the course of this pat down search, Chief Lavery felt what he believed to be a wallet in defendant's pocket and he asked if he could remove it and search its contents. Defendant agreed and permitted the removal and search of his wallet. Officer Reddy observed a folded up dollar bill that contained what he suspected to be L.S.D. Field tests confirmed that the substance contained L.S.D. and defendant was placed under arrest.
Defendant was then indicted by the Medina County Grand Jury for one count of possession of a controlled substance in violation of R.C. 2925.11(A) and (C)(5)(a). On January 30, 1998, defendant moved the trial court to suppress the evidence obtained during the search. The trial court denied the motion on April 8, 1998, finding that the initial encounter did not constitute a "seizure" under the Fourth Amendment to the United States Constitution, and that the search leading to the evidence was conducted with defendant's consent. Defendant then entered a plea of no contest, was found guilty, and sentenced accordingly. This appeal followed.
 II. Assignment of Error The trial court errored [sic] when it failed to find the evidence seized from [defendant] should be suppressed as a violation of his rights under the Fourth Amendment of the United States Constitution.
In his sole assignment of error, defendant argues that the trial court erred by failing to grant his motion to suppress. However, defendant makes three distinct arguments in support of this proposition. First, he claims that the trial court erred by finding that the initial encounter between defendant and the police did not amount to a "seizure" for purposes ofFourth Amendment analysis. He next asserts that the search of his vehicle was not conducted pursuant to his consent. Finally, defendant argues that he did not voluntary consent to the search of his person or wallet and, therefore, the evidence should have been suppressed. This Court will address each issue in turn.
 A.
We begin by noting that the decision to grant or deny a motion to suppress involves a question of law. As such, this Court will review the trial court's judgment granting or denying such motion de novo. State v. Russell (Apr. 29, 1998), Summit App. Nos. 18206, 18207, unreported at 3; see, also, Ornelas v.United States (1996), 517 U.S. 690, 699, 134 L.Ed.2d 911, 920. As stated in Russell, "[a]n appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference[.]" Russell, supra. In State v. Cumberledge (Sept. 16, 1998), Lorain App. No. 97CA006959, unreported, this Court further noted that
 "[w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and thus, stands in the best position to resolve issues of fact and witness credibility. Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting such facts as true, this court must independently determine, as a matter of law, whether the facts meet the requisite legal standard."
Id. at 5, quoting Cuyahoga Falls v. Stephenson (June 18, 1997), Summit App. No. 18011, unreported at 4-5.
The protections guaranteed by the Fourth Amendment to the United States Constitution afford citizens a fundamental principle of constitutional law:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The Fourth Amendment to the United States Constitution. Although fundamental principles of constitutional law, the tenets of theFourth Amendment are not impenetrable. The touchstone ofFourth Amendment jurisprudence is reasonableness. However,Fourth Amendment scrutiny is not triggered merely by an officer approaching a citizen and proceeding to ask that person questions. It is well settled that
 "[a] personal interaction between a police officer and a citizen is not necessarily a seizure of the person. A "seizure" occurs only where the officer, through force or a show of authority, has restrained the liberty of a person. * * * Police questioning, by itself, is unlikely to result in a Fourth Amendment violation."
(Second alteration in original.) State v. Arnette (Jan. 3, 1996), Summit App. No. 17219, unreported at 4, quoting State v.Daniel (1992), 81 Ohio App.3d 325, 328. In the instant case, there was no "seizure" to trigger Constitutional scrutiny. It is only when an encounter with police loses its consensual nature that Fourth Amendment scrutiny is triggered. See United States v.Mendenhall (1980), 446 U.S. 544, 553-555, 64 L.Ed.2d 497, 509.Mendenhall set forth an objective standard for determining when a "seizure" has occurred for purposes ofFourth Amendment analysis. When a police officer approaches an individual to question him, that person is seized forFourth Amendment purposes only if, in view of the totality of the circumstances, a reasonable person would have believed that he was not free to leave. Id. at 554, 64 L.Ed.2d at 509; see, also,Florida v. Royer (1983), 460 U.S. 491, 501-502, 75 L.Ed.2d 229,239; Florida v. Bostick (1991), 501 U.S. 429, 435-436,115 L.Ed.2d 389, 399. Mendenhall then listed several examples of situations that could, when weighed in light of the totality of the circumstances, determine whether a seizure had occurred. Those circumstances included the threatening presence of police officers, display of weapons, physical touching of the defendant, and use of language or a tone of voice that indicated compliance with the officer's request might be compelled. Mendenhall, supra, at 554, 64 L.Ed.2d at 509.
Upon review of this case, none of the situations listed inMendenhall were present. The officers encountered defendant while still in their police cruiser, in a public parking lot, and said only "Sir" to him which resulted in defendant approaching the officers. Chief Lavery then asked defendant for his name. That inquiry did not constitute a seizure. See State v. Taylor (1995),106 Ohio App.3d 741, 747. Defendant could have refused the request, but he did not. He gave his name and then volunteered that he was on probation for a felony. After this initial conversation, the officers then made several requests for consent to search defendant's vehicle, person, and wallet. Upon receiving his consent the officers properly conducted the searches. Defendant argues that because he was on probation he felt compelled to talk to the officers and did not feel he was free to leave. In order to entertain this claim we would have to delve into the subjective state of mind of defendant at the time of this incident. However, the test for determining whether a seizure has occurred is clearly an objective one requiring consideration of what a reasonable person under the specific set of conditions would have felt. In viewing the totality of the circumstances in the instant case, this Court cannot conclude that defendant had been seized, thereby triggering Fourth Amendment scrutiny. The first issue raised by Defendant's assignment of error is overruled.
 B. Defendant next avers that the trial court erred by determining that he had voluntarily consented to the search of his van. His argument rests upon the premise that the basis for the officers' original "stop" was terminated upon determining his identity, and that they had no independent bases for his continued detention. Relying upon State v. Robinette
(1997), 80 Ohio St.3d 234 ("Robinette II"), defendant maintains that his continued detention without further justification was in violation of his Fourth Amendment rights. However, the underlying principle of defendant's argument is that he was "stopped." Based upon our conclusion that defendant was not seized for purposes of Fourth Amendment protections, we cannot conclude that he was unlawfully detained beyond the scope of the original purpose of the "stop" pursuant to Robinette II. Additionally, the record indicates that defendant voluntarily consented to the search of his vehicle. Thus, the second issue presented by defendant's assignment of error is overruled.
 C. Finally, defendant argues that the searches of his person and wallet were not conducted pursuant to his voluntary consent. As discussed supra, the protection of the Fourth Amendment is not absolute. Certain "exceptions" to the warrant requirement have been carved out of the parameters of the Fourth Amendment. One such exception to the requirements of both a warrant and probable cause is a search which is conducted pursuant to consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219, 36 L.Ed.2d 854, 858. Consent to search must be voluntarily given, however it need not be knowing and intelligent as required for a waiver of rights. Id. at 248-49, 36 L.Ed.2d at 875. Voluntariness is found where, from the totality of the circumstances, it appears that the consent was not the product of governmental coercion. Id. A consent search cannot exceed the parameters of the consent given. Walter v. United States (1980), 447 U.S. 649, 656-57, 65 L.Ed.2d 410, 417-18.
Defendant first asserts that he was not told he was free to leave prior to the officer's request for consent to search. This claim is simply contrary to law. In Ohio v. Robinette (1996),519 U.S. 33, 136 L.Ed.2d 347 ("Robinette I"), the United States Supreme Court held that an officer is not required to inform a defendant that he is free to go before a consent to search may be deemed voluntary. Id. at ___, 136 L.Ed.2d at 355. The Court noted that "`[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.'" Id., quoting Schneckloth, supra, at 227,36 L.Ed.2d at 863. Thus, defendant's argument is without merit.
Defendant also argues that his consent was not voluntary because he was aware of the contents of his wallet, and based upon this knowledge, he would not have voluntarily consented to the search. The voluntariness of an individual's consent to search is a question of fact that must be determined from the totality of the surrounding circumstances. Robinette I, supra, at ___,136 L.Ed.2d at 355; State v. Ingram (1992), 82 Ohio App.3d 341, 347. As the United States Supreme Court stated in Florida v. Bostick,supra, at 434-35, 115 L.Ed.2d at 398-99:
 [E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search[,] * * * as long as the police do not convey a message that compliance with their requests is required.
(Citations omitted.) The testimony before the trial court was that Chief Lavery felt defendant's wallet in his pocket, asked if could remove it, and then requested defendant's consent to search its contents. Chief Lavery testified that defendant gave his permission to conduct the search. The record is devoid of any evidence indicating that Chief Lavery's request for consent made any indication to defendant that his compliance was required. Based upon the totality of the surrounding circumstances, this Court cannot conclude that defendant did not voluntarily consent to the search. Therefore, the entirety of defendant's assignment of error is overruled.
 III. Defendant's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
 Judgment affirmed. KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
SLABY, P.J. and CARR, J. CONCUR.
[1] Sometime after this incident, the village of Briarwood Beach became the village of Chippewa Lake.