The STATE of Ohio, Appellee,

v.

TAYLOR et al., Appellants.   [Nine Cases.]

[Cite as *State v. Taylor* (1999), 135 Ohio App.3d 634.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

Nos. OT–98–040, OT–99–001, OT–99–004, OT–99–006, OT–99–011, OT–99–013, OT–99–015, OT–99–016 and OT–99–022.

Decided Nov. 19, 1999.

*Mark E. Mulligan,* Ottawa County Prosecuting Attorney, *Paul Skaff* and *Kelly M. Roberts,* Assistant Prosecuting Attorneys, for appellee.

*Terrence R. Rudes,* for appellants Steven R. Taylor, Scott K. Emery, Stephen M. McDowall, Ginger Kirk, and Timothy Matthews.

*James L. Reinheimer,* for appellants Larry A. Baughman and Richard D. Heimberger.

*Michael W. Sandwisch,* for appellant Nelson F. Lozier.

MELVIN L. RESNICK, Judge.

This is a consolidated appeal from nine separate judgments of the Ottawa County Municipal Court. Eight of the defendants-appellants are Steve R. Taylor, Scott K. Emery, Larry Baughman, Stephen M. McDowall, Nelson F. Lozier, Richard D. Heimberger, Ginger Kirk, and Timothy Mathews. The ninth defendant-appellant, Jason T. Bodager, failed to file an appellate brief.

Each of the remaining defendants in this case was arrested and charged with, among other things, having a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath in violation of R.C. 4511.19(A)(3). In each case, the defendant filed a motion to suppress the results of his or her respective breath-alcohol tests predicated, in part, on claims of the inadmissibility of this evidence. Appellants maintained that, in each of their cases, the state failed to comply with the regulations governing instrument check procedures for breath-testing machines. For example, appellant Heimberger contended, *inter alia*, that the batch from which the solution used in performing the instrument check was "invalid," that the solution was not properly maintained, that no evidence existed to show that the target value of the solution corresponded to the actual solution reading, and that a mandated instrument check was not performed. Other issues raised by the various defendants included an alleged failure to conduct a radio frequency interference ("RFI") survey and a purported abuse of discretion on the part of the Director of the Ohio Department of Health in certifying the target value for the solution used to perform an instrument check. It appears that for the purpose of addressing the challenge to the certification of the target value of the instrument check solution and, allegedly, the instrument checks themselves,[1] the trial court "consolidated" the nine cases and several others, see, *e.g., State v. Dresser* (Nov. 19, 1999), Ottawa App. No. OT–99–029, unreported, with *State v. Breier,* another case involving the same or similar issues on a motion to suppress.[2]

After a single hearing on the matters raised, the trial court denied the motions to suppress. Each appellant in the present case then entered a plea of no contest and was found guilty of a violation of R.C. 4511.19(A)(3). On appeal, this court consolidated, *sua sponte,* the nine cases.

Appellants' assignments of error are fully set forth in the Appendix to this decision and are designated as "Taylor A," "Baughman B," "Lozier C," "Heimberger D" and "Additional Consolidated E." Each appellant raises the same or similar assignments of error regarding the consolidation of this case, the deprivation of an opportunity to be heard, and the lack of evidence of substantial compliance with the regulations. See Taylor A, Assignments of Error Nos. 2, 3,

---

1. In its decision in *Breier,* as consolidated with the present cases, the lower court did address the matter of instrument checks in four cases, using batch No. 96130, that are not before this court. Even though the issue of proper instrument checks was raised by most of the appellants in their motions to suppress, the court did not really discuss this issue as it relates to the appropriate batch number. In any event, the municipal court must address this issue in each of the cases on remand.

2. In its decision on the motion to suppress, the court stated, in a footnote, that the parties "stipulated that the Director utilized the same methods of approval as he did in Batch No. 96130." We cannot find any stipulations to this effect in the record of this case.

and 4; Baughman B, Assignment of Error No. 1; Lozier C, Assignments of Error Nos. 2, 3, and 4; Heimberger D, Assignment of Error No. 1; and Additional Consolidated E, Assignment of Error No. 2, 3, and 4.

In these assignments of error, appellants contend that the trial court erred in consolidating his or her respective case with *State v. Breier* because the solution employed to perform an instrument check on the breath-testing machine used in each case was from a different batch than the solution used in *Breier*. In *Breier*, the solution used was from batch No. 96130. It is undisputed that the solution used in performing an instrument check in all of the cases under consideration, excepting Ginger Kirk, was from batch No. 97010. In Kirk's case, the batch number was 97220. Appellants argue that the only evidence offered in the hearing on the motion to suppress involved batch No. 96130. They further assert that the court's action deprived them of an opportunity to present evidence of the issues as they relate to batch Nos. 97010 and 97220.

Pursuant to R.C. 4511.19(D) and 3701.143, the Director of the Ohio Department of Health ("ODH") has the authority to promulgate regulations for determining methods for analyzing a person's breath in order to ascertain the amount of alcohol in that person's breath. As pertinent to these cases, Ohio Adm.Code 3701–53–04(A) provides that a senior operator must perform an instrument check on approved evidential breath-testing instruments and an RFI check no less frequently than once every seven days. The instrument must be checked using an instrument check solution (containing ethyl alcohol), formerly known as a calibration solution, approved by the Director of Health. Ohio Adm.Code 3701–53–04(A)(1). An instrument check is valid when the result of the instrument check is at or within five one-thousandths grams per two hundred ten liters of the target value for that instrument check solution. *Id.*

However, rigid compliance with ODH regulations is not required because compliance is not always humanly or realistically possible. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 462–463, 490 N.E.2d 902, 904–905. Rather, in order to demonstrate the admissibility of challenged breath-alcohol test results, the state must introduce evidence of substantial compliance with the methods and procedures set forth in Ohio Adm.Code 3701–53–04(A)(1). *Id.* at 294, 22 OBR at 462–463, 490 N.E.2d at 903–904; *State v. Bennett* (1990), 66 Ohio App.3d 595, 597, 585 N.E.2d 897, 898. The burden then shifts to the defendant to show that he or she was prejudiced by anything less than complete technical compliance with the relevant regulation(s). *State v. Manzanares* (Apr. 16, 1999), Wood App. No. WD–98–033, unreported, 1999 WL 247125.

While Crim.R. 12 does not bar the "consolidation" of separate criminal cases involving different defendants for the determination of like issues in a motion to suppress, we are convinced that there is an even greater need than in

civil cases that the issues in the criminal cases be firmly rooted in a common question of law or fact, see Civ.R. 42(A). In the present cases, there were some common questions of law concerning the two batches involved.[3] Nevertheless, because three separate batches were involved, there were no common questions of fact. Further, our review of the record reveals that no evidence related to either batch No. 97010 or batch No. 97220 was presented at the suppression hearing. Accordingly, the state failed to demonstrate substantial compliance with ODH regulations.[4] Accord *State v. Dresser, supra.*

Finally, the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law. "Due process * * * demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner * * *." *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 459, 668 N.E.2d 457, 463. The suppression hearing provided to appellants did not provide them with a meaningful opportunity to address their challenges to batch Nos. 97010 and 97220.[5] Therefore, appellants are entitled to a hearing or hearings on the issues raised in their motions to suppress as they relate specifically to either batch No. 97010 or batch No. 97220. For these reasons, we find well taken Taylor's, the Additional Consolidated's (Emery, McDowall, Kirk, and Mathews) and Lozier's Assignments of Error Nos. 2, 3, and 4.[6] Baughman's and Heimberger's Assignments of Error No. 1 are found well taken.

---

3. Some of the defendants raised different issues in their motions to suppress. For example, in addition to arguing that the Director of Health abused his discretion in certifying batch No. 97010, some, but not all, of the defendants asserted that law enforcement personnel failed to comply with the record-keeping requirements set forth in the regulations.

4. Despite the lack of evidence on issues related to a failure to comply with various ODH regulations, the trial court denied appellants' motions to suppress, without comment, *in toto.*

5. In *State v. Manzanares, supra,* the certifications of batch Nos. 97010 and 97220 were challenged. This court found that the Director of Health did not abuse his discretion in certifying these batches. See, also, *State v. Holly* (Nov. 8, 1999), Clermont App. Nos. CA99–01–002 and CA99–02–020, unreported, 1999 WL 1016029; *State v. Kimpton* (May 13, 1999), Franklin App. No. 98–AP–1048, unreported, 1999 WL 333310. Thus, it could be argued that this issue in the present appeals was decided. However, such a conclusion would require judicial notice of the testimony provided in *Manzanares.* A court cannot take notice of proceedings in separate actions even when the separate actions involve the same parties and were before the same court. *State v. Raymundo* (Aug. 18, 1995), Trumbull App. No. 94–T–5025, unreported. Here, the proceedings before the Ottawa County Municipal Court involve different parties than in *Manzanares* and were heard in a different court. Therefore, a separate suppression hearing or hearings concerning batch Nos. 97010 and 97220 must be held. *State v. Whealdon* (Mar. 31, 1997), Washington App. No. 96CA29, unreported, 1997 WL 157477.

6. Taylor, Lozier, and the Additional Consolidated appellants also assert, in their Assignments of Error Nos. 4, that the trial court's denial of due process also denied them effective

Many of the remaining assignments of error are rendered moot by this finding. These include all of Baughman's and Heimberger's assignments of error (which are identical to the assignments of error set forth in *Dresser*). In addition, Taylor's Assignments of Error Nos. 5, 6, and 7 are moot. Additional Consolidated's (Emery, McDowall, Kirk, and Mathews) Assignments of Error Nos. 5, 6, and 7 are moot and Lozier's Assignments of Error Nos. 5, 6, and 7 are moot.

In his Assignment of Error No. 1, Taylor argues that the court erred in denying his motion to suppress because the court based its decision on the admission of an uncertified fax of a "calibration" solution certificate. In their Assignment of Error No. 1, the Additional Consolidated appellants maintain that the state failed to offer a certified certificate of approval for batch Nos. 97010 and 97220. While our decision renders these assignments of error technically moot, we are compelled to comment on the procedures followed in this case.

Prior to consolidation with the *Breier* case, the municipal court held a hearing on Taylor's motion to suppress. That motion raised four prongs or branches. These consisted of an alleged lack of probable cause to arrest, an alleged failure to provide Taylor with his *Miranda* rights, a claimed failure to subject the BAC Datamaster used to determine Taylor's breath alcohol at the police department to an RFI and a claimed failure to perform an instrument check on the Alco–Sensor RBT III used to ascertain the amount of alcohol in appellant's breath at the site of his arrest with a solution having a known result. The solution used to perform instrument checks on the BAC Datamaster and the Alco–Sensor RBT III was from batch No. 97010.

At a December 1997 hearing, the court addressed the merits of appellant's two constitutional issues and orally denied them. The state of Ohio conceded that the RFI performed on the BAC Datamaster was "done improperly" and relied on a motion filed in another case. Even though Taylor objected due to the differing batch numbers of the solutions in the two cases, the court "consolidated" the calibration issue with that of *Breier*.

The court's judgment on Taylor's motion to suppress is actually the court's decision on the motions to suppress in the *Breier* case. That decision does not address the constitutional issues raised by Taylor's motion to suppress or the admittedly improper RFI. Taylor's motion to suppress was denied by the use of a stamp on the suppression motion itself.

The Additional Consolidated appellants were afforded even less of an opportunity to address the issues raised in their motions to suppress. Thus, while

---

assistance of counsel. We agree, but find that this issue is, in essence, decided by our disposition of the due process question.

Taylor's Assignment of Error No. 1 and the Additional Consolidated's Assignment of Error No. 1 actually go to the substantial-compliance question and are moot, we hope that the municipal court will, on remand, deal with all the issues raised in each defendant's case and rule on them accordingly.

In his Assignment of Error No. 1, Lozier contends that law enforcement officials lacked "probable cause to stop or arrest him." Specifically, appellant argues that the arresting officer, Trooper Tosha Riter of the Ohio State Patrol, did not see him operating his vehicle and committing any violations of the traffic laws.

▇ During the early morning hours of September 5, 1997, Trooper Riter and Officer John Belcher of the Danbury Township Police Department were talking to a woman they found walking down the middle of the street. Their patrol cars were parked in a driveway behind them. Trooper Riter saw Lozier's vehicle go past them and was aware that it pulled into the driveway behind the patrol cars. Belcher told the trooper to go talk to the person in the vehicle. When the trooper turned, she saw appellant standing alone outside the vehicle she had just seen pass on the street. He was standing at the open door on the driver's side of that vehicle.

When Trooper Riter spoke to Lozier, she immediately detected an odor of alcohol on his breath and noticed his slurred speech. He stated that he was in the area to pick up the female who had been walking down the middle of the road. Riter asked Lozier to perform three field sobriety tests, which he failed. Trooper Riter then placed Lozier under arrest for operating a motor vehicle while under the influence of alcohol. His motor vehicle remained at the scene per Lozier's request.

▇ A police officer does not violate the Fourth Amendment "by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer* (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236. An individual is free to decline an officer's request for information without fear of prosecution. *State v. Daniel* (1992), 81 Ohio App.3d 325, 328, 610 N.E.2d 1099, 1101–1102. For example, when a police officer merely approaches a person seated in a parked car, no "seizure" of the person occurs. *State v. Johnston* (1993), 85 Ohio App.3d 475, 620 N.E.2d 128. Such approaches do not require that a police officer have a reasonable suspicion of criminal activity before making the approach. *Id.* These encounters fall outside the Fourth Amendment. *Id.* See, also, *State v. Schott* (May 16, 1997), Darke App. No. 1415, unreported, 1997 WL 254141.

Based on a review of the evidence offered at the suppression hearing, we find that the instant case presents one of those encounters that falls outside the Fourth Amendment and was not a "stop" as ordinarily defined. Thus, Trooper Riter did not have to possess a reasonable suspicion of criminal activity before approaching Lozier.

In an instance, such as the one before us, the police officer is described as engaging in a "community caretaking function." *State v. Douglas* (Apr. 22, 1998), Summit App. No. 18642, unreported, 1998 WL 195902, citing *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–715. It is eminently clear that Trooper Riter's investigation of a vehicle that pulled into a driveway and parked behind law enforcement patrol cars during an early morning police inquiry of another individual on a public street is within this caretaking function. Therefore, any reference to a reasonable and articulable suspicion to stop a moving vehicle was unnecessary in this case. For these reasons, Lozier's Assignment of Error No. 1 is found not well taken.

On consideration whereof, this court finds that all but one of the appellants in this case were prejudiced and did not receive a fair hearing. The judgments of the Ottawa Municipal Court in Case Nos. TRC–972597A, TRC–973532A, TRC–973308A, TRC-972682A, TRC–973883A, TRC–974772A, TRC–975934A, and TRC–973640A are reversed, and these causes are remanded to that court for further proceedings consistent with this judgment. Pursuant to App.R. 18 and Loc. App.R. 5, appeal No. OT–99–001 (TRC–980033B) is ordered dismissed at Jason Bodager's costs. Costs of all other appeals assessed to appellee.

*Judgments accordingly.*

SHERCK and PIETRYKOWSKI, JJ., concur.

· APPENDIX

TAYLOR A

STATEMENT OF ASSIGNMENTS OF ERROR

Error No. 1:

The court erred by denying the defendant's motion to suppress based upon the introduction of a noncertified fax copy of a calibration solution certificate.

Error No. 2:

The court erred in denying defendant's motion to suppress because there is no evidence of calibration of the breath-testing machine.

Error No. 3:

The court erred in consolidating the defendant's motion to suppress with another case involving a different solution and denying the defendant the opportunity to be heard on the issues raised.

Error No. 4:

The court erred by denying the defendant due process of law and right to effective assistance of counsel.

Error No. 5:
As a matter of law, the procedures of the Ohio Department of Health in the present case constitute an abuse of discretion.

Error No. 6:

The court erred in putting the burden of proof on the defendant to prove an abuse of discretion.

Error No 7:

The decision of the court is against the manifest weight of the evidence.

## BAUGHMAN B

### ASSIGNMENTS OF ERROR

Error No. 1:

The court erred in consolidating the defendant's motion to suppress with another case involving a different solution and denying the defendant the opportunity to be heard on the issues raised.

Error No. 2:

As a matter of law, the procedures of the Ohio Department of Health in the present case constitute an abuse of discretion.

Error No. 3:

The court erred in putting the burden of proof on the defendant to prove an abuse of discretion.

Error No. 4:

The decision of the court is against the manifest weight of the evidence.

## LOZIER C

### ASSIGNMENTS OF ERROR

Error No. 1:

The trial court erred to the prejudice of the defendant in failing to grant the defendant's motion to suppress for lack of probable cause to stop or arrest the defendant.

Error No. 2:

The court erred in denying defendant's motion to suppress because there is no evidence of calibration of the breath-testing machine.

Error No. 3:

The court erred in consolidating the defendant's motion to suppress with another case involving a different solution and denying the defendant the opportunity to be heard on the issues raised.

Error No. 4:

The court erred by denying the defendant due process of law and [the] right to effective assistance of counsel.

Error No. 5:

As a matter of law, the procedures of the Ohio Department of Health in the present case constitute an abuse of discretion.

Error No 6:

The court erred in putting the burden of proof on the defendant to prove an abuse of discretion.

Error No. 7:

The decision of the court is against the manifest weight of the evidence.

## HEIMBERGER D

### ASSIGNMENTS OF ERROR

Error No. 1:

The court erred in consolidating the defendant's motion to suppress with another case involving a different solution and denying the defendant the opportunity to be heard on the issues raised.

Error No. 2:

As a matter of law, the procedures of the Ohio Department of Health in the present case constitute an abuse of discretion.

Error No. 3:

The court erred in putting the burden of proof on the defendant to prove an abuse of discretion.

Error No. 4:

The decision of the court is against the manifest weight of the evidence.

## ADDITIONAL CONSOLIDATED E

### *ADDITIONAL* STATEMENT OF ASSIGNMENTS OF ERROR

Error No. 1:

The court erred by denying the defendant's motion to suppress based upon the total lack of a calibration solution certificate.

Error No. 2:

The court erred in denying defendant's motion to suppress because there is no evidence of calibration of the breath-testing machine.

Error No. 3:

The court erred in consolidating the defendant's motion to suppress with another case involving a different solution and denying the defendant the opportunity to be heard on the issues raised.

Error No. 4:

The court erred by denying the defendant due process of law and [the] right to effective assistance of counsel.

Error No. 5:

As a matter of law, the procedures of the Ohio Department of Health in the present case constitute an abuse of discretion.

Error No. 6:

The court erred in putting the burden of proof on the defendant to prove an abuse of discretion.

Error No 7:

The decision of the court is against the manifest weight of the evidence.