OPINION
Defendant-appellant Ronald Elliott appeals his conviction in Columbiana County Court S.W. of R.C. 4511.19(A)(1), driving under the influence. Prior to trial, Elliott filed a motion to suppress all evidence obtained at the "stop." This court is asked to determine whether the trial court improperly denied the motion to suppress. For the reasons stated below, the decision of the trial court is hereby affirmed.
 FACTS
On April 22, 2001, around 2:00 a.m., while on routine patrol on Depot Road in Columbiana County, Ohio, Trooper Metz was driving through the intersection of Depot Road and Teagarden Road when he noticed two stationary motorcycles with their engines running in the westbound lane of Teagarden Road. Trooper Metz turned his vehicle around and proceeded back to Teagarden Road to check on the motorcycles. The motorcycles had not moved from their stationary position when he reached them. Trooper Metz approached the motorcycles with his lights flashing to determine if everything was alright. He did not suspect any criminal activity. He approached both riders and asked if everything was alright and asked for their license and registration. He noticed a strong odor of alcohol emanating from Elliott, one of the drivers. Trooper Metz noticed that Elliott's eyes were bloodshot and glassy and his speech was a little slow and slurred. Trooper Metz then asked Elliott if he could administer field sobriety tests on him. Elliott consented to the tests. Trooper Metz then administered the horizontal gaze test, the one-leg stand test, the turn-and-walk test, and the portable breath test. Elliott failed all of the tests.
Trooper Metz arrested Elliott. Elliott filed a motion to suppress all evidence collected at the stop because the trooper did not have a reasonable, articulable suspicion that criminal activity was occurring. The court denied the motion. The case proceeded to trial. Elliott entered a plea of no contest. The trial court found him guilty of R.C.4511.19(A)(1), driving under the influence. Elliott was sentenced to 180 days in jail, 170 days were suspended, and a $500 fine was imposed. This timely appeal followed. The fine and sentence were stayed pending appeal.
 ASSIGNMENT OF ERROR
Elliott raises one assignment of error on appeal. This assignment contends:
 "THE TRIAL COURT ERRED IN CONCLUDING THAT THERE WAS A REASONABLE ARTICULABLE SUSPICION TO STOP THE DEFENDANT'S VEHICLE FOR A TRAFFIC VIOLATION."
Elliott claims that the trial court improperly denied the motion to suppress. Elliott insists that a police officer must have a reasonable, articulable suspicion of criminal activity before the police officer can stop a person. Elliott claims that Trooper Metz did not have a reasonable, articulable suspicion of criminal activity. The state claims that under the appropriate circumstances, i.e. questioning whether a vehicle needs assistance, a police officer may be justified in approaching a vehicle without needing any reasonable basis to suspect criminal activity.
The appellate review of a motion to suppress presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. During the hearing proceedings of a motion to suppress, the trial court assumes the role of trier of fact. Id., citing State v. Payne (1995),104 Ohio App.3d 364, 367; State v. Robinson (1994), 98 Ohio App.3d 560,570; State v. Rossiter (1993), 88 Ohio App.3d 162, 166. A reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as it is supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543, 546; State v.Claytor (1993), 85 Ohio App.3d 623, 627. However, the application of the law to those facts is subject to a de novo standard of review. Harris,98 Ohio App.3d at 546; State v. Anderson (1995), 100 Ohio App.3d 688, 691. Because we are required to accept the trial court's findings of fact, we must determine whether such facts meet the applicable standard for a stop.
In committing a stop, a police officer is bound by the requirements in the Fourth and Fourteenth Amendments of the U.S. Constitution, as well as Section 14, Article I of the Ohio Constitution which prohibits any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. Terry v. Ohio (1968),392 U.S. 1, 20-21; State v. Andrews (1991), 57 Ohio St.3d 86, 87. It is well settled that before stopping a vehicle, a law enforcement officer must have reasonable suspicion, based on specific and articulable facts that an occupant is or has been engaged in criminal activity. See Terry,392 U.S. 1; Delaware v. Prouse (1979), 440 U.S. 648; State v. Ball
(1991), 72 Ohio App.3d 43, 46, citing Adams v. Williams (1972),407 U.S. 143. However, courts have stated that there is nothing in either the State or Federal Constitutions prohibiting law enforcement officers from approaching and engaging in a conversation with a motorist who they believe may be in need of assistance. State v. Norman (1999),136 Ohio App.3d 46; Long, 127 Ohio App.3d 328. The Third District Court of Appeals explained the above statement by stating that if a court were to say that a reasonable, articulable suspicion were needed for every stop, the court would be overlooking the police's legitimate role as a public servant designed to assist those in distress and maintain and foster public safety. Norman, 136 Ohio App.3d at 53. The Third District was acknowledging the very important role of community caretaking functions that police officers and state highway patrolmen engage in. Clearly, under appropriate circumstances, a law enforcement officer may be justified in approaching a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity. Norman,136 Ohio App.3d at 54, citing State v. Langseth (N.D. 1992), 492 N.W.2d 298,300; State v. Brown (N.D. 1993), 509 N.W.2d 69; People v. Murray (Ill. 1990), 560 N.E.2d 309; Crauthers v. Alaska (Alaska App. 1986), 727 P.2d 9;State v. Pinkham (Me. 1989), 565 A.2d 318; State v. Marcello (Vt. 1991),599 A.2d 357; and State v. Oxley (N.H. 1985), 503 A.2d 756.
Police officers, without reasonable suspicion of criminal activity, are allowed to intrude on a person's privacy to carry out "community caretaking functions" to enhance public safety. Norman,136 Ohio App.3d at 54. Such a preliminary inquiry is not so exceedingly onerous so as to be unreasonable. City of Marysville v. Mushrush (June 18, 1999), 3rd Dist. No. 14-99-07, quoting State v. Vanderhoff (1995), 106 Ohio App.3d 21,24. A key community caretaking function is to help motorists who are stranded or in distress. The key to such permissible police action is the reasonableness required by the Fourth Amendment. Id. "When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base his/her safety concerns." Id. This requirement allows a reviewing court to answerTerry's fundamental question in the affirmative: "would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id., citing Terry, 392 U.S. at 21-22.
Some Ohio Appellate Districts have examined situations similar to the situation in this case. In those factual situations, the courts have recognized that the officer's actions in approaching the car that appeared to be in distress were reasonable. Norman, 136 Ohio App.3d 46;Long, 127 Ohio App.3d 328 (stating that the officer was reasonable in approaching the car due to the community caretaking function, however, the motion to suppress was appropriately granted for other reasons); Statev. Pelsue (May 23, 1997), 11th Dist. No. 95-P-0149; State v. Smith (Oct. 16, 1995), 12th Dist. No. CA95-03-009.
In Norman, a car was parked at an intersection at 2:43 a.m. The lights were on and the vehicle was running but was stationary for an extended period of time. The trooper activated her overhead lights and pulled up behind the car to investigate whether it was in need of assistance. Upon talking to the driver, the trooper suspected that he had been drinking. The trial court found that the trooper possessed specific and articulable facts sufficient to support a reasonable concern for the condition of the vehicle, the safety of the occupants, and the safety of other motorists.Norman, 136 Ohio App.3d at 55. The court stated that the most reasonable course of action under the circumstances was to approach the vehicle to determine if assistance was needed. Id. Therefore, the trial court was correct in denying the motion to suppress.
In Pelsue, a truck was parked in the middle of the road with the engine running, the lights illuminated, and the turn signal flashing. A trooper approached the car to determine if the driver was in need of assistance. The trooper found the driver passed out at the wheel. The trooper shook the driver to wake him up and smelled the odor of alcohol. The driver was arrested for driving under the influence. The driver filed a motion to suppress which was denied. In affirming the trial court's decision, the appellate court stated that the trooper acted reasonable in investigating whether this was a disabled vehicle or a stranded motorist. Pelsue, 11th Dist. No. 95-P-0149.
In Smith, the trooper actually witnessed appellant driving, however, nothing that he witnessed indicated criminal activity. The trooper saw appellant pull into a driveway, get out of the car and pop the hood and the trunk. The trooper was concerned appellant was having car trouble, so he activated his flashers and stopped to see if he could be of assistance. When the trooper began talking to appellant he noticed a strong odor of alcohol. Appellant was arrested for driving under the influence. Appellant filed a motion to suppress, which was overruled. The appellate court affirmed the trial court's ruling by stating that an encounter which does not involve a show of authority is a consensual encounter that does not trigger Fourth Amendment scrutiny; therefore, an officer does not need reasonable suspicion merely to approach an individual in order to make reasonable inquiries of him. Smith, 12th Dist. No. CA95-03-009, citing Florida v. Bostick (1991), 501 U.S. 429.
All the above cases allow an officer to approach a vehicle without having a reasonable, articulable suspicion of criminal activity for the purpose of determining if the vehicle and its passengers were in need of assistance. The officers' actions in these respective cases were reasonable under the circumstances. Likewise, Trooper Metz's actions were reasonable in approaching Elliot. A motorcycle sitting stationary on a road at 2:00 a.m. with its lights on and engine running, talking to another motorcyclist whose engine is also running with its lights on could reasonably lead to the conclusion that one motorcycle could be in the need of assistance.
Furthermore, Trooper Metz's request for Elliott's driver's license and registration was not a constitutional seizure under the Fourth Amendment so long as the officer "[does] not convey a message that compliance with [his/her] request is required." State v. Cominsky (Dec. 14, 2001), 11th Dist. No. 2001-L-023 (discussing community care taking function and request for license upon approach of a vehicle), quoting Bostick,501 U.S. 437. See, also, State v. Daniel (1992), 81 Ohio App.3d 325,328. No testimony indicated that Elliott felt he was under the compulsion to comply with the request or that Trooper Metz restrained Elliott's liberty in order to obtain identification.
Additionally, once Trooper Metz noticed the odor of alcohol emanating from Elliott, and Elliott's slurred speech and glassy eyes, Trooper Metz had a reasonable, articulable suspicion that criminal activity, i.e. driving under the influence, had occurred or was about to occur. Therefore, no Fourth Amendment seizure occurred when Trooper Metz administered field sobriety tests on Elliott. There is no hard and fast rule requiring a police officer to observe the erratic driving of an individual to validly arrest him for driving under the influence of alcohol. Pelsue, 11th Dist. No. 95-P-0149, citing State v. Henderson
(1990), 51 Ohio St.3d 54, 56; Oregon v. Szakovits (1972),32 Ohio St.2d 271, 273-274; Hamilton v. Jacobs (1995),100 Ohio App.3d 724, 729-730; Bucyrus v. Williams (1988),46 Ohio App.3d 43, 45; State v. Eves (Nov. 6, 1995), 11th Dist. No. CA95-02-010; Middletown v. McGuire (Oct. 9, 1995), 12th Dist. No. CA94-11-202; State v. Surgener (Mar. 23, 1995), 3rd Dist. Nos. 3-94-27, 3-94-29. It is enough that Elliott was seated in the driver's seat with the key in the ignition and the engine running to establish that he was operating the vehicle. State v. Clearly (1986), 22 Ohio St.3d 198. As such, the trial court did not error in overruling the motion to suppress.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., and DeGenaro, J., concur.