ANITA LASTER MAYS, J., DISSENTING:
 

 {¶ 40} I respectfully dissent from the majority's opinion affirming the trial court's denial of Thomas's motion to suppress. I conclude that the facts do not support the applicable legal standard.
 

 {¶ 41} Officer Luther testified that he patrolled the CMHA areas throughout Cuyahoga County, Ohio. On November 14, 2015, at 6:57 p.m., an anonymous caller reported that three juveniles, approximately 13 or 14 years old, were in the parking lots with bricks in their hands looking to do damage or breaking into vehicles. The juveniles were on the CMHA property in the area of East 71st Street and Wade Park.
 

 {¶ 42} After responding to the call, Officer Luther was advised that one juvenile male was wearing a black jacket. Officer Luther did not respond immediately, due to other calls, but arrived in the particular area at 7:36 p.m. After arriving, Officer Luther stated that he "observed a male matching the given description with either a black or-black jacket or hoodie. The male noticed my presence, began to pick up his pace." Officer Luther stated that the area was not well lit. He also stated that he was in the area to see if he could find the three males that were walking around with bricks.
 

 {¶ 43} Officer Luther encountered Thomas in the parking lot of a convenience store, not the lot identified in the initial call. Officer Luther called out to Thomas to inquire where he was coming from. Officer Luther asked Thomas to remove his hands from his pocket even though it was November 14, 2015. After requesting Thomas to speak with him and for "officer safety," Officer Luther requested if he could pat Thomas down and asked if he had any weapons on his person. It was revealed that Thomas had a gun in his pocket. Thomas was then arrested.
 

 {¶ 44} Officer Luther admitted that the only description that matched the dispatch log was that Thomas was a male wearing a black jacket. Thomas was a 33-year-old male with a mustache and beard, not a juvenile. Thomas was also by himself and did not have a brick in his hand. Additionally, Thomas was not in the parking lot identified to the dispatcher by the 911 caller.
 

 {¶ 45} After the suppression hearing, the trial court determined that the totality of the circumstances supports that the encounter with Thomas was consensual. Therefore, Thomas's admission to possession of a weapon could not be suppressed.
 

 {¶ 46} "Appellate review of the denial of a motion to suppress involves a mixed question of law and fact."
 
 State v. Burnside
 
 ,
 
 100 Ohio St.3d 152
 
 ,
 
 2003-Ohio-5372
 
 ,
 
 797 N.E.2d 71
 
 , ¶ 8. Therefore, when considering a trial court's denial of a motion to suppress, our standard of review is "divided into two parts."
 
 State v. Preztak
 
 ,
 
 181 Ohio App.3d 106
 
 ,
 
 2009-Ohio-621
 
 ,
 
 907 N.E.2d 1254
 
 , ¶ 22 (8th Dist.). In a hearing on a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' "
 
 Id.
 
 at ¶ 22, quoting
 
 State v. Lloyd
 
 ,
 
 126 Ohio App.3d 95
 
 ,
 
 709 N.E.2d 913
 
 (7th Dist.1998). Deference is, therefore, given to the trial court's findings of fact related to a motion to suppress if they are supported by competent, credible evidence.
 
 Preztak
 
 at ¶ 22. A reviewing court must, however, independently determine whether those facts satisfy the applicable legal standard.
 
 State v. Martinez
 
 , 8th Dist. Cuyahoga Nos. 103572 and 103573,
 
 2016-Ohio-5515
 
 ,
 
 2016 WL 4497143
 
 , ¶ 19.
 

 {¶ 47} In reviewing the facts of this case, I would conclude that the facts support that there was no probable cause to even stop Thomas and, therefore, a determination of a consensual encounter could never be made.
 

 {¶ 48} The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs.
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 8-9,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968). A police officer must have a reasonable suspicion that a defendant has been engaged in criminal activity.
 

 {¶ 49} Factors relevant in assessing reasonable suspicion include the specificity of the description of the suspect, the number of people in the area, where the person was stopped, and how long ago the crime occurred.
 
 See
 

 United States v. Goodrich
 
 ,
 
 450 F.3d 552
 
 , 561 (3d Cir.2006). Even though a description is less than specific, other factors supporting the stop can exist so long as the facts known yield a limited pool of suspects.
 
 United States v. Broomfield
 
 ,
 
 417 F.3d 654
 
 , 655 (7th Cir.2005).
 
 See also
 

 State v. Stewart
 
 ,
 
 193 Ohio App.3d 716
 
 ,
 
 2011-Ohio-2910
 
 ,
 
 953 N.E.2d 886
 
 , ¶ 8 (8th Dist.).
 

 {¶ 50} In this case, the description of the suspects was three juveniles, approximately 13 or 14 years old, in a parking lot, with bricks in their hands, wearing black or dark jackets. The caller reported this activity at 6:57 p.m. The officer did not respond until 7:36 p.m. Thomas is 33 years old, with a mustache and beard, was alone, and not in the parking lot the caller identified as the place of possible mischief. The description given yielded a limited pool of suspects where Thomas did not fit that description. To say that Thomas had on a black jacket or hoodie I would find was too vague to justify a stop.
 

 {¶ 51} In
 
 Stewart
 
 , a shooting occurred in a residential neighborhood and police responded immediately. Officers were given a description of a male 5'10 ' to six feet tall in his late 20s or 30s in dark clothing and a female. Officers located Stewart and a female several blocks away. Officers called to Stewart and asked if he had any weapons. Stewart looked both ways but did not respond. Officers patted him down and found a weapon. Stewart was charged with carrying a concealed weapon.
 

 {¶ 52} This court found that the description relayed to the officers was not specific enough to justify an investigatory stop. The description was vague and could have
 matched anyone in the neighborhood.
 
 Stewart
 
 at ¶ 9. As stated above, the description given regarding the juveniles did not come remotely close to that of Thomas. Additionally, the officer stated that Thomas began to walk faster when he noticed the officer. I would find that Thomas's movement was not justification for the officer to stop Thomas.
 

 {¶ 53} In
 
 Stewart
 
 ,
 
 supra
 
 , at ¶ 17, this court also stated,
 

 [T]he only other factor that arguably came into play was Stewart's act of looking both ways after being asked if he had any weapons. Even assuming that an act made in plain view of the police could be considered "furtive," furtive movements alone are insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable.
 

 See
 

 State v. Kessler
 
 ,
 
 53 Ohio St.2d 204
 
 , 208,
 
 373 N.E.2d 1252
 
 (1978). I would conclude that because the officer stated that Thomas began walking faster when he noticed the officer was insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable.
 

 {¶ 54} I would also conclude that once Thomas was called over to speak with Officer Luther, and asked if he could pat him down, Thomas's movement resulted in a seizure. Thomas was not free to walk away as the majority concludes. In determining whether the police contact should be viewed as a consensual encounter, which does not violate an individual's Fourth Amendment rights, or a detention that does implicate Fourth Amendment protections, the question to be asked is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."
 
 United States v. Mendenhall
 
 ,
 
 446 U.S. 544
 
 , 554,
 
 100 S.Ct. 1870
 
 ,
 
 64 L.Ed.2d 497
 
 (1980). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."
 
 Terry
 
 ,
 
 392 U.S. 1
 
 , 16,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 .
 

 {¶ 55} When Officer Luther requested to speak with Thomas and then requested Thomas to remove his hands from his jacket or hoodie, I would conclude that Thomas determined that it was an order and therefore did not feel that he was free to leave.
 

 [C]ourts evaluating an officer's order that an individual remove his hands from his pockets have determined that a reasonable person would feel restrained by the order and would not feel free to leave, thereby resulting in a "seizure" within the language of the Fourth Amendment.
 
 See
 

 State v. Daniel
 
 ,
 
 81 Ohio App.3d 325
 
 , 328,
 
 610 N.E.2d 1099
 
 (1992) ;
 
 State v. Montgomery
 
 ,
 
 1996 WL 283943
 
 , Montgomery App. No. 15232 (May 31, 1996), unreported.
 

 Richmond Hts. v. Dawson
 
 , 8th Dist. Cuyahoga No. 71259,
 
 1997 WL 321499
 
 (June 12, 1997). Considering the totality of the circumstances, I would conclude that Officer Luther's testimony did not describe suspected criminal behavior from Thomas to justify an investigative stop and once Thomas was stopped that he was seized violating his Fourth Amendment protections.
 

 {¶ 56} Therefore, I would conclude that Officer Luther did not have probable cause to make an investigatory stop of Thomas. The officer could not justify stopping Thomas because Officer Luther arrived in the area approximately 40 minutes after the dispatched call, Thomas in no way matched the description of the juveniles, he was alone, and in a different parking lot. The fact that Thomas began to walk faster could have been for several reasons, i.e., as Officer Luther testified, "it's a pretty
 rough area." Additionally, the fact that Thomas had his hands in his pockets is insignificant because it was a November evening in the city of Cleveland.
 

 {¶ 57} Therefore, I would conclude that there were no rational inferences taken from the facts given by Officer Luther to warrant an intrusion of Thomas's rights. Additionally, I would conclude that there would not be a need to make an analysis regarding a consensual encounter because the encounter should have never occurred and was illegal.