OPINION
This is an accelerated appeal brought by appellant, James J. Cominsky, challenging the trial court's denial of his motion to dismiss and/or suppress on the basis that the evidence against him was obtained as a result of an unlawful detention. For the reasons that follow, the judgment of the trial court will be affirmed.
The following facts were adduced at the suppression hearing. At approximately 1:27 a.m., on July 26, 2000, Trooper Larry Roberts ("Trooper Roberts") of the Ohio State Highway Patrol was traveling eastbound on U.S. Route 20 when he observed appellant, traveling westbound, make a left hand turn in front of his patrol car into the parking lot of a local tavern. According to Trooper Roberts, appellant had not used his directional signal to indicate that he was making a left turn.
However, Bruce Parker ("Mr. Parker"), who happened to be in the parking lot of the tavern, testified to a different set of facts. According to Mr. Parker, he observed appellant traveling eastbound on U.S. Route 20 while Trooper Roberts' patrol vehicle was proceeding westbound, and that appellant made a right turn into the parking lot of the tavern.
While there appears to be a conflict as to the direction Trooper Roberts and appellant were traveling, this does not, in any way, affect our analysis and determination of appellant's assignment of error.
Returning to the facts of this case, upon entering the parking lot, Trooper Roberts observed appellant fall off his motorcycle for no apparent reason. However, according to Mr. Parker, a van had moved in front of appellant as he entered the parking lot, causing his motorcycle to tip over.
In response to this situation, Trooper Roberts pulled into the parking lot to ascertain whether appellant needed assistance.[1] As to this point, Mr. Parker stated that he heard appellant tell the officer that he did not need any help and waived him on. Nevertheless, the officer went to assist appellant with his motorcycle and also engaged in a conversation with him.
During the conversation, Trooper Roberts asked appellant if he were all right, and then asked him for his driver's license and registration. As appellant produced his driver's license, the officer noticed an odor of alcohol on his breath. As a result of this observation, Trooper Roberts asked appellant whether he had consumed any alcohol. Appellant's response was that he had two beers.
Trooper Roberts also noticed that appellant's eyes were bloodshot, and that he was having difficulty standing. Suspecting that appellant was under the influence, the officer administered several field sobriety tests and subsequently arrested appellant for operating a vehicle while under the influence of alcohol and/or drugs, in violation of R.C.4511.19(A)(1); and operating a vehicle with a prohibited concentration of alcohol, in violation of R.C. 4511.19(A)(3).
Upon consideration, the trial court denied appellant's motion to suppress. Thereafter, appellant entered a plea of no contest to operating a vehicle with a prohibited concentration of alcohol in violation of R.C. 4511.19(A)(3), while the remaining charge was dismissed. Appellant's sentence was stayed pending the outcome of this appeal.
It is the denial of his motion to suppress from which appellant appeals, submitting a single assignment of error for our consideration. Under this assignment of error, appellant contends that there was no suspicious conduct from which Trooper Roberts could have formed a reasonable and articulable suspicion or probable cause to warrant an investigatory stop. Because appellant contests only the alleged stop, we will limit our analysis accordingly.[2]
In analyzing appellant's assignment of error, we must initially determine whether there was a stop or a seizure of appellant within the meaning of the Fourth Amendment. If a stop or seizure, indeed, occurred, then we inquire into whether it violated the Fourth Amendment.
Not every police-citizen encounter implicates the Fourth Amendment.Terry v. Ohio (1968), 392 U.S. 1, 19. Rather, it is when the encounter rises to the level of a seizure that the Fourth Amendment is triggered.Terry at 19. As the United States Supreme Court stated in California v.Hodari D. (1991), 499 U.S. 621, 623:
 "To constitute a seizure of the person * * * there must be either the application of physical force, however slight, or where that is absent, submission to an officer's show of authority' to restrain the subject's liberty."
 With this in mind, we note that the record is in agreement that appellant's vehicle was already stopped in the parking lot when, for whatever reason, appellant fell off his motorcycle. Thus, appellant was not seized for Fourth Amendment purposes when Trooper Roberts approached him. See, e.g., State v. Barnhart (Aug. 17, 1999), Franklin App. No. 98AP-1474, unreported, 1999 WL 617912 (holding that a stop did not take place when the officer approached the defendant's vehicle, which was already stopped in the parking lot at 1:30 a.m., to determine if everything was okay); Marysville v. Mushrucsh (June 18, 1999), Union App. No. 14-99-07, unreported, 1999 WL 455397, at 1 (holding that an officer did not stop the defendant when the officer came upon the defendant who had stopped beside the road with car trouble); State v. Douglas (Apr. 22, 1998), Summit App. No. 18642, unreported, 1998 WL 195902, at 2-3 (holding that a stop had not occurred when a police officer observed a vehicle "straddling" the roadway and an entranceway to a gas station and the officer approached the vehicle thinking that it might be disabled).[3]
The fact is that both Trooper Roberts and Mr. Parker observed appellant fall off his motorcycle after entering the parking lot, albeit for different reasons. This suggested that something was wrong, either with appellant or his motorcycle. Appellant, further, claims that Trooper Roberts assisted him against his will, and that as a result, he was unlawfully detained in violation of his Fourth Amendment rights.
As to this point, the record contains no evidence that Trooper Roberts' concern for appellant was relieved simply because appellant told the officer he was fine. Everyday experience tells us that people who are ill or injured are often unaware of their own condition. Trooper Roberts could, in good faith, continue to ascertain whether appellant was in need of assistance, thereby engaging in "the legitimate exercise of community caretaking function." State v. Blair (Aug. 13, 1999), Wood App. No. WD-98-081, unreported, 1999 Ohio App. LEXIS 3687, at 7. See, also, Statev. Norman (1999), 136 Ohio App.3d 46, 54; State v. Vanderhoff (1995),106 Ohio App.3d 21, 24; State v. Thayer (Aug. 31, 1990), Clark App. No. 2667, unreported, 1990 WL 125704, at 3, citing Cady v. Dombrowski
(1973), 413 U.S. 433, 441. "There is nothing in either the state or federal Constitution that prohibits law enforcement from approaching, and engaging in conversation with, a motorist who they believe may be in need of assistance." State v. Long (1998), 127 Ohio App.3d 328, 334.
More importantly, the United States Supreme Court has determined that there is no constitutional seizure when an officer asks to see an individual's driver's license, so long as the officer "[does] not convey a message that compliance with [his/her] request is required." Floridav. Bostick (1991), 501 U.S. 429, 437. See, also, Florida v. Royer
(1983), 460 U.S. 491, 501; State v. Pierce (1998), 125 Ohio App.3d 592,596-597; State v. Daniel (1992), 81 Ohio App.3d 325, 328; WarrensvilleHeights v. Mollick (1992), 79 Ohio App.3d 494, 497. In the instant case, there is no testimony to indicate that appellant felt he was under compulsion to respond to the request for identification or that Trooper Roberts restrained his liberty or applied any amount of physical force.
To summarize, until the point when appellant produced his driver's license, no stop or seizure had occurred. Thus, the Fourth Amendment was not implicated, and no level of suspicion was required when Trooper Roberts approached appellant. Norman at 54; State v. Taylor (1999),135 Ohio App.3d 634, 642.
However, once Trooper Roberts asked appellant to submit to various field sobriety tests, a stop or seizure had occurred. In order to detain an individual, an officer must have reasonable suspicion based on specific and articulable facts that an individual is or has been engaged in criminal activity. Terry at 21; Delaware v. Prouse (1979),440 U.S. 648, 663.
In the present matter, Trooper Roberts ascertained facts to support the suspicion that appellant was driving under the influence of alcohol. For instance, Trooper Roberts witnessed appellant as the driver of the motorcycle on a public roadway, and he observed, for whatever reason, appellant drop his motorcycle in the parking lot. Upon inquiry, Trooper Roberts noticed the smell of alcohol on appellant's breath, that his eyes were bloodshot, and that he had difficulty standing. Further, appellant stated that he had consumed two beers.[4] At that point, Trooper Roberts had reasonable suspicion for detaining appellant and asking him to perform the field sobriety tests.
Based on the foregoing analysis, we conclude that the trial court properly denied appellant's motion to suppress. Therefore, appellant's lone assignment of error is meritless, and the judgment of the trial court is affirmed.
PRESIDING JUDGE JUDITH A. CHRISTLEY, NADER, J., GRENDELL, J., concur.
[1] In contrast, Mr. Parker testified that the officer parked on the right hand berm of U.S. Route 20 facing eastbound, approximately twenty-five to thirty feet away from appellant's motorcycle.
[2] For instance, appellant does not claim that the police officer lacked probable cause to arrest him.
[3] Appellant has cited only cases which address further inquiry by an officer in the context of a stop. Here, there was no stop.
[4] The trial court specifically declined to consider the alleged left turn that was made without a directional signal.