[Cite as *State v. Springer*, 2011-Ohio-4724.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24353 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 10-CR-1796 |
| v. | : | |
| | : | |
| LEVAUGHN SPRINGER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SEAN J. VALLONE, Atty. Reg. #0064053, 5 Irongate Park Drive, Suite A. Centerville, Ohio 45459
and
RICHARD A. NYSTROM, Atty. Reg. #0040615, 120 West Second Street, Suite 1502, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Levaughn Springer, Jr. appeals from his conviction and

sentence, following a no-contest plea, for Possession of Crack Cocaine in an amount less than one gram, in violation of R.C. 2925.11(A), a felony of the fifth degree. Springer's appellate counsel has filed a brief under the authority of *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, indicating that he was unable to find any assignments of error having arguable merit.

{¶ 2} By entry filed herein on April 18, 2011, Springer was accorded the right to file his own pro se brief within sixty days thereof; he has not done so.

{¶ 3} Springer's trial counsel has filed a motion for leave to submit a brief as amicus curiae, in support of Springer's appeal. By entry filed herein on June 8, 2011, we deferred ruling on that motion until submission of this appeal to a panel of judges of this court. Trial counsel's amicus curiae brief is filed in this court, and is part of our record.

{¶ 4} Pursuant to *Anders v. California*, we have performed our duty of independently reviewing the record.

I

{¶ 5} At the conclusion of a hearing on Springer's motion to suppress evidence upon the ground that it was obtained as the result of an unlawful search and seizure, the trial court made the following findings of fact, from the bench, and upon the record:

{¶ 6} "I believe the facts in this case reveal that on June the 5th of 2010, at about 3:15 p.m. in the City of Dayton, Ohio, in Montgomery County, that Officer [Joseph] Setty, who is a sworn officer of the Dayton Police Department with four years' experience with that department and prior experience with others, was working overtime at the Stratford apartments.

{¶ 7} "And Officer said he was in uniform, utilizing a marked police cruiser. At about 3:15 p.m. he saw an individual in a red and white shirt, later identified as the defendant, Levaughn Springer, on Dugger Road at the Stratford apartments.

{¶ 8} "Officer said he saw Mr. Springer, recognized at least the cruiser as he entered a drive or some type of roadway in the apartment. I presume it's somewhat of an apartment complex, although I'm not entirely specific on that. But at any rate, the defendant, Mr. Springer, put his head down and turned right when the cruiser was in his general vicinity, turned right to walk away.

{¶ 9} "Officer said he then drove up toward Mr. Springer but did not drive right immediately adjacent to him, rather stopped the vehicle and got out. That is, Officer said he got out of the vehicle and walked over to where Levaughn Springer was, the officer being on foot. So both gentlemen being on foot at that eventual time.

{¶ 10} "The fact is that – and there was only one witness in the case [Officer Setty]. The Court finds that Officer Setty – based on his reasonableness of his answers, the logic of it, his appearance on the stand, his demeanor – the Court finds Officer Setty to be credible.

{¶ 11} "Officer Setty did not order Mr. Springer to stop. He did not draw his service revolver rather he just approached Mr. Springer there in the complex, the apartment complex.

{¶ 12} "Officer said he asked Mr. Springer what his name was. Mr. Springer, generally in this transaction, was cooperative. An indication of that was that Mr. Springer gave Officer Setty his name upon request.

{¶ 13} "Officer Setty then asked Mr. Springer if he lived there, I presume meaning the apartments. Mr. Springer said he did not but that his father lived there that he was there for a

birthday party for his father on that particular day.

{¶ 14} "And I'm not sure of the exact order of these questions but I think the next question was can I see your identification. Officer Springer [*sic*][1] asked that – I should say Officer Setty asked that. Mr. Springer cooperated, gave his driver's – or gave some type of ID.

{¶ 15} "I then believe the next question was whether or not Mr. Springer had any guns or drugs on his person. And Mr. Springer responded he did not. Then Officer Setty asked Mr. Springer if he could search him. He – I presume to be sure there were no guns. And Mr. Springer said yes, he consented to that.

{¶ 16} "Officer Setty engaged in a pat-down. This being summertime, I don't think there was all that much clothing but a pat-down of the outer clothing. And then during that – well, initially there was some hesitation or movement by Mr. Springer. The officer then said to Mr. Springer, turn back. I think Mr. Springer had turned away a little bit. Setty told him to turn back. Mr. Springer complied with that request or order, I don't know exactly how it'd be categorized or characterized.

{¶ 17} "At that point then, a pat-down of the shorts or pants of Mr. Springer, Officer felt a substance which he recognized as crack cocaine in the I believe it was the left rear pocket of the shorts or pants.

{¶ 18} "There was a question by Officer Setty to Mr. Springer about what was that or maybe even an indication that Officer felt it was crack cocaine. There was a response. I think it was an unsolicited response that Mr. Springer had found that object in his friend's car.

---

[1] "[*sic*]" in original transcript.

{¶ 19} "The officer tested the substance that he had found in the left rear pocket with a cobalt reagent, tested positive for crack cocaine.

{¶ 20} "And then at that point, there was an arrest made for possession of cocaine."

{¶ 21} With one exception, the evidence in the record, consisting solely of the testimony of Officer Setty, supports the trial court's findings. That exception concerns the trial court's finding that Springer's statement concerning the origin of the crack cocaine followed a question by Officer Setty. Officer Setty clearly testified to the contrary:

{¶ 22} "Q. Okay. When you retrieved the crack cocaine from his pocket, did he make any statements?

{¶ 23} "A. Yes.

{¶ 24} "Q. What did he state to you?

{¶ 25} "A. He stated that he just found that getting out of his friend's car.

{¶ 26} "Q. Was that in response to any question that you had posed to him?

{¶ 27} "A. No, I did not ask him any question at that time.

{¶ 28} "Q. It was – as you pulled out the crack cocaine, he then volunteered that statement?

{¶ 29} "A. That is correct."

{¶ 30} The trial court overruled Springer's motion to suppress. Thereafter, Springer pled no contest, was found guilty, and was sentenced to community control sanctions, a (mandatory) six-month driver's license suspension, and was ordered to pay court costs and attorney's fees in the amount of $130.

{¶ 31} From his conviction and sentence, Springer appeals.

II

{¶ 32} Springer's assigned appellate counsel has filed a brief under the authority of *Anders v. California*, supra, reflecting that counsel was unable to find any potential assignments of error having arguable merit. Counsel identified the possible error of the trial court in having overruled Springer's motion to suppress as one potential assignment of error that counsel considered, but found to be without any arguable merit.

{¶ 33} Coincidentally, Springer's trial counsel's proposed brief as amicus curiae asserts as the sole assignment of error the trial court's overruling of Springer's motion to suppress. The argument in the proposed amicus brief is predicated upon the following factual predicate: "The officer then asked to search Springer but began his pat-down and search without hearing any reply."

{¶ 34} We find no arguable merit to the factual proposition upon which the assignment of error in the proposed amicus brief is predicated. When this subject was first brought up in direct examination, Setty testified: "I asked him if he had any guns or drugs on him and he stated no. I then asked him if I could search him. He stated sure and put his hands up in the air."

{¶ 35} One transcript page later, still during Setty's direct examination, he testified as follows:

{¶ 36} "Q. Okay. And when you asked if you could search him, what was his response?

{¶ 37} "A. He stated sure and put his hands up in the air.

{¶ 38} "Q. And when he did that what did you do?

{¶ 39} "A.   I then conducted a pat-down on him and then I started patting him down for weapons and for drugs, contraband."

{¶ 40} During cross-examination, in response to a leading question, Setty testified in a way that seemingly brought into question this sequence of events:

{¶ 41} "Q.   I thought you said you asked him to search.

{¶ 42} "A.   I asked him for a search for – originally, I asked him if he had any guns or drugs on him.   He stated no.   Then I asked him if I could search him.   He stated sure.

{¶ 43} "Q.   And at that point, he had his hands up; right?

{¶ 44} "A.   Yes.   He placed his hands up on his own."

{¶ 45} But later in the cross-examination, the following colloquy occurred:

{¶ 46} "Q.   Now, you said that you asked if you could search but you had already started to feel him down; did you not?

{¶ 47} "A.   No, I did not."

{¶ 48} During re-direct, the sequence of events was clarified:

{¶ 49} "Q.   I just want to make sure of a couple of things.

{¶ 50} "First one, you asked him for permission to search; is that correct?

{¶ 51} "A.   That is correct.

{¶ 52} "Q.   And prior to you asking him for permission to search his person, you didn't do any pat-down or anything like that; is that correct?

{¶ 53} "A.   That's correct.   I had not touched him.

{¶ 54} "Q.   It was after you asked for permission then – and he gave you permission to search – that you then did a pat-down; is that correct?

{¶ 55} "A.   Correct.

{¶ 56} "Q.   Okay.

{¶ 57} "And then the other thing I want to make sure is clear.   When you asked for permission to search, there was testimony he put his hands up.   Did you order him to put his hands up?

{¶ 58} "A.   No.

{¶ 59} "Q.   Did you kick his legs and spread them apart, at all?

{¶ 60} "A.   No.

{¶ 61} "Q.   When you asked for permission to search, is the only thing that you did then was pat him down?

{¶ 62} "A.   That is correct."

{¶ 63} The evidence in the record clearly supports the trial court's finding that Officer Setty sought, and obtained, Springer's consent to the search of his person before the pat-down search that resulted in the discovery of the crack cocaine.   No reasonable argument can be made that the evidence in the record does not support that finding.

{¶ 64} Furthermore, the transaction preceding the consent to search was clearly a consensual encounter.   Officer Setty did nothing that would cause a reasonable person in Springer's position to believe that he was not free to leave.   In *State v. Thomas*, Montgomery App. No. 23979, 2011-Ohio-1292, "several" police officers from a ten-officer "gang interdiction squad," of whom three were specifically named in the opinion, left their cruisers and approached a group of persons who appeared to be gambling.   We held that the defendant in that case, who was one of the persons in the group, was never in detention before he was

asked for his consent to a search. (The defendant responded to the request by producing money and a plastic bag of crack cocaine from his pocket, thereby obviating the need for a search.)

{¶ 65} In the case before us, just one officer, Setty, approached Springer. Setty asked Springer some questions, culminating in the request for consent to search. We see no reasonable argument that can be made that this transaction was anything other than a consensual encounter until the crack cocaine was found.

{¶ 66} In short, we find no arguable merit in the potential assignment of error that the trial court erred in overruling Springer's motion to suppress.

{¶ 67} We have independently reviewed the record, as required by *Anders v. California*, supra, and find no potential assignments of error having arguable merit. Springer was fully advised of the potential penalties to which his no-contest plea would expose him; he indicated that he understood the nature of the offense after the prosecutor recited the charge; he indicated that he was not under the influence of drugs or alcohol; and he indicated that he understood each constitutional right that he would be surrendering as a result of his plea, after each right was explained by the trial court.

{¶ 68} At the sentencing hearing, both Springer and his trial counsel were afforded the opportunity to address the court. The sentence – the imposition of standard community control sanctions – was within the trial court's discretion. The trial court explained the sentence, including each of the requirements of the community control sanctions imposed.

{¶ 69} We find no potential assignments having arguable merit, and we conclude that this appeal is wholly frivolous. Therefore, we see no need for the filing of an amicus brief by

Springer's trial counsel, and the motion for leave to file an amicus brief is overruled. Of course, as we have noted above, we read the proposed amicus brief in the course of considering whether the assignment of error proposed therein – that the trial court erred in overruling Springer's motion to suppress – has any arguable merit.

III

{¶ 70} This court having found that there are no potential assignments of error having arguable merit, and that this appeal is wholly frivolous, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Sean J. Vallone
Richard A. Nystrom
Levaughn Springer, Jr.
Timothy N. O'Connell