[Cite as *State v. Rappley*, 2013-Ohio-964.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

SEBASTIAN K. RAPPLEY

      Defendant-Appellant


Appellate Case No.   25156

Trial Court Case No. 11-CR-2693

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of March, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BRENT E. RAMBO, Atty. Reg. #0076969, 15 W. Fourth Street, Suite 250, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Sebastian Rappley, appeals from his conviction and sentence for possession of cocaine in violation of R.C. 2925.11(A) and possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). He contends the trial court erred by overruling his motion to suppress evidence that he claims was obtained as a result of an illegal seizure and pat-down. Specifically, he argues that the trial court erroneously characterized his encounter with a Dayton Police Officer as a consensual encounter. Rappley also argues that no reasonable articulable suspicion existed upon which to conduct a pat-down search upon Rappley.

{¶ 2} We conclude the trial court did not err in overruling the motion to suppress. The facts in the record do not establish an illegal seizure occurred, but instead an initial consensual encounter occurred that subsequently became an investigatory detention. The facts also establish the pat-down was conducted as a result of a reasonable articulable suspicion that Rappley may have been armed and dangerous.

## I. Facts

{¶ 3} On August 4, 2011, at approximately 4:45 p.m., Officer Sean Humphrey of the City of Dayton Police Department, and his partner, Officer Bower, were on a routine patrol near a high rise apartment building located at 2765 Wentworth Avenue in Dayton, Ohio. The area surrounding the apartment building has numerous problems with weapons, drug activity, drinking, loitering, and violent crime.

{¶ 4} While patrolling the area, the officers pulled their cruiser into a parking lot located behind the apartment building. The officers began to approach the back of the apartment building on foot when they noticed a male individual carrying what looked like a woman's purse.

The male carrying the purse was later identified as the Appellant, Sebastian Rappley.

{¶ 5}    After observing Rappley carrying the purse, the officers began to walk in his direction.  When Rappley noticed the officers walking toward him, Rappley walked up to a female, and then he and the female ducked behind a large bush.   The officers lost sight of them for a short period of time and could not tell what was going on behind the bush.  Officer Humphrey believed Rappley and the female went behind the bush either to obtain or to conceal something.

{¶ 6}    Shortly after the officers witnessed Rappley and the female duck behind the bush, the officers saw them emerge from the bush and begin to walk toward a BP gas station. They walked together at first, and then parted ways.  Rappley continued to walk toward the BP station, and the female began to walk in the direction of the apartment building.  Officer Humphrey went to make contact with Rappley and Officer Bower went to make contact with the female.

{¶ 7}    Officer Humphrey initiated the contact with Rappley by walking up to him and saying that he needed to speak with him.  Rappley stopped walking as Officer Humphrey approached him.  Officer Humphrey did not order Rappley to stand or stay with him.  At this time, Officer Humphrey noticed Rappley was no longer carrying the purse.  Following the initial contact, Humphrey requested Rappley's name and Rappley complied.  Officer Humphrey then advised that he was going to conduct a pat-down for safety concerns.  Officer Humphrey testified that he had been in law enforcement for 14 years, and based on his experience he was concerned about the presence of weapons due to Rappley's earlier evasive behavior.

{¶ 8}    Officer Humphrey began the pat-down process by standing behind Rappley and

having him lift his arms. Officer Humphrey asked Rappley if he had anything sharp on him that would poke Humphrey. Rappley responded by saying that he had a "hot stem." Humphrey understood a "hot stem" to be a glass or metal pipe used to smoke crack cocaine. Officer Humphrey asked where the pipe could be found, and Rappley advised it was in his pocket. Officer Humphrey patted down the outside of the pocket where Rappley said the pipe was located. Humphrey testified that he had felt crack pipes in the past, and was familiar with how they feel. When he patted down Rappley's pocket, he realized it contained a crack pipe, and removed the pipe from Rappley's pocket. Humphrey noticed the end of the pipe was warm, like it had just been used. He also observed a "chunk" of crack cocaine inside the pipe.

{¶ 9} Following the pat-down, Officer Humphrey handcuffed Rappley and escorted him to the cruiser. During this time, Rappley made a statement to the officer that he had "just hit it." Officer Humphrey testified that he believed this meant Rappley had smoked the crack cocaine. Officer Humphrey did not ask any questions prior to Rappley's statement and proceeded to read him his *Miranda* Rights. After the *Miranda* rights were read to Rappley, he acknowledged that he understood his rights and was willing to answer questions without a lawyer being present. Rappley then made statements in the cruiser on the way to jail. Rappley never asked for an attorney and never asked to remain silent. Rappley answered questions appropriately and was coherent.

## II. Course of Proceedings

{¶ 10} On October 24, 2011, Rappley was indicted for possession of cocaine in violation of R.C. 2925.11(A) and possession of drug paraphernalia in violation of R.C.

2925.14(C)(1). On December 12, 2011, Rappley filed a motion to suppress all evidence and statements obtained during his encounter with Officer Humphrey. On February 7, 2012, the trial court conducted an evidentiary hearing on Rappley's motion to suppress, and subsequently overruled the motion. The trial court held the encounter between Rappley and Officer Humphrey was consensual and the subsequent pat-down was lawful. On February 9, 2012, the Appellant entered a no contest plea and was sentenced to eight months in prison for the possession of cocaine and a concurrent 30-day prison sentence for the possession of drug paraphernalia. Rappley then filed this appeal, arguing that the trial court erroneously overruled his motion to suppress.

### III. The Trial Court did not Err in Overruling Rappley's Motion to Suppress

{¶ 11} Appellant's sole Assignment of Error states:

The trial court erred in overruling Appellant's Motion to Suppress.

{¶ 12} In support of his Assignment of Error, Rappley argues his encounter with Officer Humphrey was an illegal seizure that the trial court erroneously characterized as a consensual encounter. Rappley also argues that no reasonable articulable suspicion existed upon which to conduct a pat-down. Rappley claims all contraband and incriminating statements obtained by Officer Humphrey derived from the unlawful seizure and pat-down and are therefore subject to suppression pursuant to the fruit of the poisonous tree doctrine. We disagree.

#### A. Standard of Review

{¶ 13} Generally, when reviewing a decision regarding a motion to suppress "an appellate court must accept the trial court's findings of fact if they are supported by competent,

credible evidence." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, it must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997).

{¶ 14} Rappley makes note of United States Supreme Court opinion *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), for the proposition that determinations of reasonable suspicion should be reviewed *de novo* on appeal. *Id.* at 699. However, in *Ornelas*, the Supreme Court also states, "we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* Based on this language, this district previously held that the standard of review set forth in *Ornelas* is "substantially the same as the one this court and other appellate courts in Ohio have traditionally used." *State v. Gipp*, 2d Dist. Montgomery No. 17369, 1998 WL 906462, *3 (Dec. 31, 1998).

{¶ 15} Accordingly, we find the trial court's finding of facts is supported by competent, credible evidence, and hereby approve it and adopt it as our own. Using these facts we therefore must determine: (1) the nature of the encounter between Officer Humphrey and Rappley; and (2) whether a reasonable suspicion existed upon which to effectuate a pat-down.

### B. The Three Types of Police-Citizen Encounters

{¶ 16} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *State v. Taylor,* 106 Ohio App.3d 741, 747, 667

N.E.2d 60 (2d Dist. 1995). This protection is not implicated in every situation where police officers have contact with an individual. *Id.,* citing *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The United States Supreme Court has created three categories of police-citizen contact to identify situations where the Fourth Amendment protections apply: (1) consensual encounters; (2) investigative detentions, also known as *Terry* stops; or (3) seizures that are equivalent to arrests. *Taylor* at 747-749, citing *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982).

{¶ 17} Consensual encounters take place when "the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The Fourth Amendment protections are not implicated in consensual encounters unless "the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Taylor* at 748, citing *Mendenhall* at 554; *Terry v. Ohio*, 392 U.S. 1, 16 and 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Encounters that involve "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are all examples of circumstances where consensual encounters may become seizures. *Mendenhall* at 554-555. However, an officer's request to examine a person's identification or search a person's belongings does not make an encounter nonconsensual. *Taylor* at 747, citing *Florida v. Rodriguez*, 469 U.S. 1, 4-6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Florida v. Bostik*, 501 U.S.

429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The request to conduct a pat-down also does not render an encounter nonconsensual. *See State v. Hardin,* 2d Dist. Montgomery No. 20305, 2005-Ohio-130, ¶ 19-20.

{¶ 18} The second type of encounter, known as a *Terry* stop, is an investigatory detention that "is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest." *Taylor* at 748. During a *Terry* stop, "[l]aw enforcement officers may briefly stop and/or detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot." *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry* at 30. Officers may also "perform limited protective searches for concealed weapons when the surrounding circumstances created a suspicion that an individual may be armed and dangerous." *State v. Jordan*, 2d Dist. Montgomery No. 22271, 2008-Ohio-199, ¶ 9, citing *Terry*.

{¶ 19} "The third type of encounter involves a seizure that is the equivalent of an arrest. To perform such a seizure the police officer must have probable cause." *Taylor,* 106 Ohio App.3d at 749, 667 N.E.2d 60, citing *State v. Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324 (1978). "A seizure is equivalent to an arrest when: (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested." *Id.*

### C. The Encounter Was Initially Consensual

{¶ 20} The trial court found that Rappley's encounter with Officer Humphrey was consensual. An example of a consensual encounter can be found in *State v. Springer*, 2d Dist.

Montgomery No. 24353, 2011-Ohio-4724. In *Springer*, an officer noticed that an individual walking on a roadway put his head down and turned in a different direction as the officer's cruiser was approaching the individual's general vicinity. *Id*. at ¶ 8. The officer got out of the vehicle and walked on foot to approach the individual. *Id*. at ¶ 9. The officer did not order the individual to stop and he did not draw his service revolver. *Id*. at ¶ 11. The officer asked for the individual's name and whether he lived in the apartment complex. *Id*. at ¶ 12 -13. The individual responded to the officer's questions in a cooperative manner and consented to a pat-down search. *Id.* at ¶ 13-15. This court held the transaction preceding the consent to search was a consensual encounter because the officer did nothing that would cause a reasonable person to believe the individual was not free to leave. *Id.* at ¶ 64.

{¶ 21} The initial encounter between Rappley and Officer Humphrey is similar to the encounter in *Springer*. In this case, Officer Humphrey was alone and in a public place when he approached Rappely. He approached Rappley on foot and Rappley voluntarily stopped walking so that Officer Humphrey could speak with him. The record indicates that Officer Humphrey did not order Rappley to stand or stay with him. Using a normal tone of voice, Officer Humphrey asked Rappley to identify himself, and Rappley cooperated. Officer Humphrey did not display his weapon, and did not physically touch Rappley. Up to this point, there is nothing in the record establishing that Rappley was restrained by Officer Humphrey and was not free to walk away and leave.

{¶ 22} Accordingly, we hold the initial encounter between Officer Humphrey and Rappley was consensual.

D. The Encounter Became an Investigatory Detention Upon Conducting a Pat-down

**{¶ 23}** When Officer Humphrey informed Rappley that he was going to conduct a pat-down, the encounter with Rappley became nonconsensual. We base this finding on the fact that Officer Humphrey did not request Rappley's permission to pat him down, but told him he was going to pat him down. In *State v. Montgomery*, 2d Dist. Montgomery No. 15232, 1996 WL 283943 (May 31, 1996), we found that an initially consensual encounter was no longer consensual once an officer ordered an individual to take his hand out of his pocket. *Id*. at *3, citing *State v. Daniel*, 81 Ohio App.3d 325, 328, 610 N.E.2d 1099 (1992). The underlying reasoning for this decision was that "a reasonable person would not have felt restricted by questions, but would have felt restrained by orders." *Id.* Accordingly, we find it would be reasonable for Rappley to have felt restricted and unable to leave when Officer Humphrey told him he was conducting a pat-down as opposed to asking him. Therefore, we find that at the time Officer Humphrey informed Rappley of the pat-down, the encounter was no longer consensual.

**{¶ 24}** A nonconsensual investigatory detention, however, does not qualify as an illegal seizure if the detaining officer has a "reasonable, articulable suspicion that criminal activity may be afoot." *Martin*, 2004-Ohio-2738, at ¶ 10, citing *Terry*, 392 U.S. at 30. Whether the detention is reasonable is determined by reviewing the totality of the surrounding circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489, (1988). The totality of the circumstances must " 'be viewed from the eyes of the reasonable and prudent police officer on the scene guided by his experience and training.' " *Bobo* at 179, quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976).

**{¶ 25}** In *State v. Allen*, 2d Dist. Montgomery No. 24587, 2012-Ohio-3709, this district determined that a reasonable articulable suspicion justified the investigative detention of an

individual who was crouched behind a pillar in front of a closed business and doing something with his hands that the officer could not see. *Id.* at ¶ 23. The pillar was located in an area where a lot of drug trafficking and arrests occurred. *Id.* Furthermore, in *Bobo*, the Ohio Supreme Court found that an individual's furtive movements of popping up and ducking down from inside a car indicated he may have been hiding something, and it was one of many factors used to establish reasonable suspicion. *Bobo* at 179. While an officer's presence in a high crime area, or a furtive movement, does not by itself justify an investigatory detention, these factors are considered under the totality of the circumstances test. *State v. Roberts,* 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18; *Bobo* at 179.

{¶ 26} In this case, Officer Humphrey testified that he observed Rappley carrying what appeared to be a woman's purse in a high crime area. When the officer started walking toward Rappley, and Rappley saw him, Rappley approached a female and the two of them ducked behind a large bush. Officer Humphrey could not see what Rappley and the female were doing behind the bush. When they emerged from the bush, Rappley was no longer carrying the purse. Officer Humphrey, who has been employed in the field of law enforcement for 14 years, considered Rappley's behavior evasive and it caused him concern. Based upon the totality of the circumstances, it was reasonable to detain Rappley because a reasonable, prudent police officer would be suspicious of criminal activity upon seeing a man carrying a purse and ducking behind a bush after noticing a police officer approaching.

{¶ 27} For the foregoing reasons, we hold there was no illegal seizure of Rappley's person because the encounter between Officer Humphrey and Rappley was initially a consensual one that turned into an appropriate investigatory detention due to a reasonable suspicion of

criminal activity.

E. <u>Reasonable Articulable Facts Existed Upon Which to Perform a Pat-Down</u>

**{¶ 28}** "Under *Terry*, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *.' " *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993); *State v. Molette*, 2d Dist. Montgomery No. 19694, 2003–Ohio–5965, ¶ 13. However, according to *State v. Smith*, 56 Ohio St.2d 405, 384 N.E.2d 280 (1978), an officer need not be certain an individual is armed to effectuate a pat-down.

**{¶ 29}** In *Terry*, the court was concerned with striking a balance between the safeguarding of a person's right to be free from unreasonable searches and seizures and protecting a police officer from bodily harm and preventing and deterring crime where there is less than probable cause to make an arrest and conduct a full incidental search of a suspect. The court found*** that the proper balance must "permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." An officer may therefore initiate a protective search when his suspicions are reasonably aroused. *Id*. at 407.

**{¶ 30}** In this case, Officer Humphrey testified that the pat-down was for his safety because he was unsure of what illegal activity Rappley was involved in. Officer Humphrey was concerned Rappley may have had a weapon because of the earlier evasive behavior of ducking behind the bush after he noticed the officer was aware of him. Furthermore, Officer Humphrey could not see what Rappley was doing behind the bush, as he could have been concealing a weapon. These facts combined with the fact that they were in a high crime area, made Officer Humphrey concerned for his safety. Although Humphrey was not absolutely certain that Rappley was carrying a weapon, it was reasonable and prudent for him to be concerned for his safety given that he was unable to see what Rappley was doing behind the bush. We therefore find that the limited, protective pat-down search conducted by Officer Humphrey was lawful.

**{¶ 31}** We hold there was no illegal pat-down of Rappley because the pat-down conducted by Officer Humphrey was based on reasonable articulable facts suggesting that Rappley may have been armed and dangerous.

**{¶ 32}** Because there was no illegal seizure or pat-down in this case, Rappley's Fourth Amendment rights were not violated. Therefore, all the contraband and incriminating statements obtained during the encounter and pat-down are admissible and not subject to suppression under the fruit of the poisonous tree doctrine.

**{¶ 33}** Rappley's sole Assignment of Error is overruled.

### IV. Conclusion

**{¶ 34}** Having overruled Rappley's sole Assignment of Error, the judgment of the trial court overruling Rappley's motion to suppress is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.


Copies mailed to:

Michele D. Phipps
Brent E. Rambo
Hon. Dennis J. Adkins